850 A.2d 505 (2004)
369 N.J. Super. 592
CAMDEN CITY BOARD OF EDUCATION and Sara Davis, as an Elected Member of the Camden City Board of Education, Plaintiffs-Appellants,
v.
James E. McGREEVEY, Governor of the State of New Jersey, in his official capacity, and Gwendolyn Faison, Mayor of Camden City, in her official capacity, Defendants Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted March 17, 2004.
Decided June 9, 2004.
*508 Alan Dexter Bowman and Brown & Brown, Newark, for appellants (Eric S. Pennington, on the brief).
Peter C. Harvey, Attorney General, attorney for respondent James E. McGreevey (Nancy Kaplan Assistant Attorney General, of counsel; Michael C. Walters, Deputy Attorney General, on the brief).
No brief has been filed on behalf of respondent Gwendolyn Faison.
Cynthia J. Jahn, General Counsel for amicus curiae The New Jersey School Boards Association (Carl Tanksley, Jr., Assistant Counsel, on the brief).
Before Judges CUFF, AXELRAD and LARIO. *506
*507 The opinion of the court was delivered by
CUFF, J.A.D.
This appeal concerns the Municipal Rehabilitation and Economic Recovery Act (MRERA), N.J.S.A. 52:27BBB-1 to -65, as amended, which provides for significant State involvement in the municipal affairs of a qualifying municipality, and in the affairs of the municipality's school district if the school district is already subject to certain other State monitoring programs. Plaintiffs contend that MRERA violates the State constitution because it is special legislation and that any gubernatorial veto of school board action violates the Open Public Meetings Act. We disagree and affirm.
In order to place our discussion of MRERA, as amended, in context, we need to discuss the statute as originally enacted and prior litigation regarding the statute.

I
On July 22, 2002, the Legislature enacted the "Municipal Rehabilitation and Economic Recovery Act." N.J.S.A. 52:27BBB-1 to -65, L. 2002, c. 43. It found that "certain municipalities" suffered from "a continuing state of fiscal distress which endures despite ... a series of measures" by the State. N.J.S.A. 52:27BBB-2(a). The distress was characterized by poverty, inadequate housing, high unemployment, high crime, the need for large police and fire departments, municipal hospitals that must provide disproportionate amounts of charity care, declining bases of taxable property to pay for such services, and the resulting depopulation and inability to attract business that would serve and employ city residents, all "without any obvious signs of improvement." N.J.S.A. 52:27BBB-2(b) through (f),(h),(k), and (m).
The Legislature observed that the substantial and recurring budget deficits of those municipalities, coupled with "a lack of [the] internal audit controls, accountability and oversight" required for efficient collection of property taxes, required continuing "extraordinary payments of State aid" as well as continuing assistance to maintain police-force staffing levels. N.J.S.A. 52:27BBB-2(g),(i),(l). Because neither government nor the private sector was making any progress in addressing all *509 those needs, it was imperative for the State to "take exceptional measures, on an interim basis, to rectify certain governance issues" and "to strategically invest those sums of money necessary in order to assure the long-term financial viability of these municipalities." N.J.S.A. 52:27BBB-2(j),(o).
For the governance of a qualifying municipality, most of the enactment's provisions addressed the needs that would follow from the two hallmarks of MRERA's application. The first hallmark was the gubernatorial appointment, "in consultation with the mayor and the governing body," of a "chief operating officer" for the municipality for a five-year term to reorganize municipal governance and finances in conjunction with the mayor and the municipality's governing body. N.J.S.A. 52:27BBB-7 to -30. The second hallmark was the creation of a subsidiary of the New Jersey Economic Development Authority for that municipality alone, which would facilitate its "rehabilitation and economic recovery" and operate several specified programs toward that end during the municipality's rehabilitation period. N.J.S.A. 52:27BBB-36 to -55.
Those aspects of the enactment were not implicated in the prior litigation and are not at issue in this appeal. Rather, the focus of the constitutional challenge to MRERA has been and remains limited to the qualification of a municipality and whether the legislative purposes justify the decision to include provisions that extend to the school board instead of just the municipal executive agencies.
In its original version, the definition of a "qualified municipality" had two elements. The first was that the municipality already be subject to the supervision of a financial review board and the State Local Finance Board pursuant to other statutory schemes. N.J.S.A. 52:27BBB-3. The second was that, as of the effective date of the enactment, the municipality must be relying on state funding for at least fifty-five percent of its "total budget." N.J.S.A. 52:27BBB-3.
Turning to school districts, MRERA applied as long as the district was located entirely within the municipality, had a nine-member board of education, and was already a "Type II" district, which meant that it was subject to "level II" monitoring pursuant to N.J.S.A. 18A:7A-14.[1]L. 2002, c. 43, § 67(a)[2]; N.J.S.A. 52:27BBB-63. For such a district, the Governor would expand the school board by appointing three additional members for a limited number of years. L. 2002, c. 43, § 67(a). *510 For the next ten years, the specified procedures for such appointment of some board members and the public election of others would ensure that the gubernatorial appointees always constituted a minority of the board. L. 2002, c. 43, § 67(a)-(e). Meetings of the school board would be subject to the Open Public Meetings Act (OPMA).[3]L. 2002, c. 43, § 67(f). Copies of the minutes of each board meeting would be sent to the Governor, who would have fifteen days to review them and to veto "any action taken" at the meeting. L. 2002, c. 43, § 68(b); N.J.S.A. 52:27BBB-64(b).
Plaintiffs Camden City Board of Education and Sara Davis commenced an action to enjoin sections 67 and 68 of MRERA as special legislation. These sections authorized the Governor to veto the minutes of the board of education and establish the composition of the board. In an August 5, 2002 opinion, Judge Smithson found that MRERA applied only to the City of Camden and only the City of Camden met the definition of a qualified municipality. Furthermore, the statute applied only to municipalities with a mayoral form of government. Finding that there was no rational basis for the classification in the challenged sections, he found these sections unconstitutional special legislation and enjoined the implementation of these provisions.

II
On December 4, 2002, in response to this ruling, the Legislature enacted L. 2002, c. 108 (the December 2002 amendments). The Legislature declared its intent of ensuring "that the expenditure of public dollars for development and redevelopment is coordinated with the expenditure of public dollars supporting schools and educational efforts" in qualifying municipalities. L. 2002, c. 108, § 1(a),(c); N.J.S.A. 52:27BBB-2.1(a),(c).
The Legislature stated its belief that the connections between school-district needs and other municipal needs, along with "the magnitude of the State's investment in a qualified municipality," require the State to be involved in improving "effective governance" for the school district as well as for the municipality. L. 2002, c. 108, § 1(d); N.J.S.A. 52:27BBB-2.1(d). The "limited school district oversight" that MRERA affords would "ensure that the proposed local tax levy to support the district's schools will not further burden the municipal tax base." Ibid. The Legislature further predicted that the anticipated improvement in the quality of education from such oversight would "assist housing revitalization by attracting new families to the community and preventing flight of current residents. It [would] also serve to attract new businesses and potential employers because the community [would] offer better-prepared graduates to the workforce." Ibid.
The December 2002 amendments expanded the set of potentially qualifying municipalities from just those with a mayoral form of government to all municipalities whose form of government included either a mayor or a chief executive officer. L. 2002, c. 108, § 3; N.J.S.A. 52:27BBB-3. In the definition of a qualified municipality, the requirement that the municipality must have relied on state funding for fifty-five percent of its total budget as of a certain date was replaced by the requirement that such reliance occur at the same time that the municipality had been under the supervision of a financial review board and the Local Finance Board for at least one year. Ibid. *511 In the definition of qualifying school districts, the December 2002 amendments eliminated the requirement that the district have a nine-member school board. L. 2002, c. 108, § 13; N.J.S.A. 52:27BBB-63. As amended, MRERA changed the requirement of being subject to level II monitoring to a requirement of being subject to either level II or level III monitoring. L. 2002, c. 108, § 4(d) and § 13; N.J.S.A. 52:27BBB-4(d) and 63. The December 2002 amendments also modified the procedures for the Governor's appointment of new members for a limited number of years, although the principle that the gubernatorial appointees would always constitute a minority of the board was retained. L. 2002, c. 108, § 13; N.J.S.A. 52:27BBB-63.
The legislative statement for the December 2002 amendments explained that the Legislature felt it had to provide for school districts as well as municipalities to qualify under MRERA, because municipal fiscal distress often coincides with a faltering school system. The legislative statement observes that "the fiscal stress, economic impoverishment, crime, and financial mismanagement which characterizes certain municipalities in this State also afflict the school district which serves the same population," which make it advantageous to seek "to improve governance at both the municipal and school district level, at a time when substantial resources will be directed to the community." Legis. Statement appended to L. 2002, c. 108.
The legislative statement explained that MRERA would be limited to "only those schools that are not making sufficient progress to meet the thoroughness and efficiency standards due to problems in the district's operation," because the kind of State oversight of a school district that MRERA provides is "appropriately applied only in districts that are [already] subject to State monitoring." Ibid. It acknowledged that only Camden and its school district presently qualify under MRERA. Ibid. However, it specifically disclaimed an intent to exclude "other municipalities whose financial circumstances and governance challenges, as defined under [MRERA], may require similar responses in the future." To that end it cited the elimination of the eligibility criteria that were unrelated to the degree of distress or poor governance, such as the form of local government or the number of school board members. Ibid.
On December 11, 2002, plaintiffs commenced this action with a complaint that was limited to the provisions of MRERA, sections 63 and 64 as amended, that would affect the Camden City Board of Education (the Camden school board). Plaintiffs alleged that those provisions were unconstitutional as special legislation because they would never apply to any other school board. Plaintiffs also alleged that the power to veto school board action, which MRERA conferred on the Governor, failed to require that any veto be exercised in compliance with the OPMA. Plaintiffs requested injunctions against any exercise of authority under the challenged provisions of MRERA.
In his March 4, 2003 opinion, Judge Smithson found that the purpose of MRERA was "the rehabilitation and recovery of distressed municipalities in a multi-faceted approach," comprising the "school system," municipal services, housing, police protection, hospitals, and institutions of higher education. The court also found that the December 2002 amendments provided for the qualification of other municipalities and school districts, and that it was "of no moment that Camden presently is alone in meeting the criteria of [MRERA]." The court concluded that "the new criteria for defining a qualified *512 municipality" were "reasonably related to assisting distressed municipalities," and that plaintiffs' argument that no other municipality would qualify due to the improbability of State intervention in another municipality was purely conjectural. The court thus ruled that MRERA in general, and the December 2002 amendments to N.J.S.A. 52:27BBB-63 and 64 in particular, were not special legislation.
Judge Smithson also held that a veto by the Governor of school board action pursuant to MRERA would not violate the OPMA, because the Governor is not a "public body," to which the OPMA is limited. Even though MRERA mandates that the school board of a qualified district follow the OPMA, the exercise of a veto by the Governor does not make the Governor a member of the school board itself, so a veto is not an action of the school board, but rather an action of the Governor in his capacity as Chief Executive Officer of the State, and thus not subject to the OPMA.

III
On appeal, plaintiffs claim that MRERA as amended remains unconstitutional special legislation. They argue that there is no rational basis for having a scheme to aid the recovery of a distressed municipality include a State takeover of the municipal school board, because the Governor has failed to "demonstrate" that State involvement in a local school district under MRERA would further the legislative purpose of ameliorating the problems of a distressed municipality. Furthermore, plaintiffs contend the independent statutory scheme for State takeovers of municipal school boards, namely, N.J.S.A. 18A:7A-15, which relies on educational criteria, is a superior vehicle for helping a distressed school district. They argue that it is irrational to apply special rules to one school district among all those that are equivalent when viewed solely from an educational perspective, when the justification for applying those rules is the distress of the municipality rather than any unique educational deficiency in the school district, and in the absence of proof that the actions the scheme permits "contribute[ ] to an improvement in the quality of education." Finally, plaintiffs argue that the December 2002 amendments are cosmetic glosses betraying the Legislature's true intent, because no other municipality will ever qualify for this scheme, as it is unlikely the State will allow another municipality to deteriorate to the same extent as Camden.
Resolution of this appeal turns solely on the interpretation of MRERA as amended. The standard of review is de novo. An appellate tribunal decides purely legal questions without deferring to a lower court's "interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty v. Township Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230, 1237 (1995).
The New Jersey Constitution requires the Legislature to pass "general laws" on most matters, and it specifically prohibits the Legislature from passing any "private, special or local laws" on a number of subjects. N.J. Const. art. IV, § 7, ¶ 9. The prohibitions relevant here are the ones against special legislation "[p]roviding for the management and control of free public schools," N.J. Const. art. IV, § 7, ¶ 9(7), or "[r]egulating the internal affairs of municipalities formed for local government...." N.J. Const. art. IV, § 7, ¶ 9(13).
The test for whether an enactment constitutes prohibited "special legislation" focuses on what it excludes, and the "appropriateness" of the exclusion in terms of the legislative purpose. Paul Kimball Hosp. v. Brick Township Hosp., 86 N.J. 429, 445, 432 A.2d 36, 44 (1981); *513 accord Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 223, 486 A.2d 305, 311 (1985). An enactment is "general" rather than special " `(1) if the class of subjects established, recognized or regulated is distinguished by characteristics sufficiently marked and important to make it a class by itself, and (2) if it encompasses all of the subjects which reasonably belong within the classification, and does not exclude any which naturally belong therein.' " Paul Kimball, supra, 86 N.J. at 445, 432 A.2d at 44 (quoting Roe v. Kervick, 42 N.J. 191, 233, 199 A.2d 834, 858 (1964)). Stated differently, "[a] general law is one that affects equally all of a group who, bearing in mind the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class themselves." Newark Superior Officers, supra, 98 N.J. at 223, 486 A.2d at 311; accord Paul Kimball, supra, 86 N.J. at 446, 432 A.2d at 44.
The test for distinguishing a special law from a general law "is similar to the analysis used to determine whether a person is afforded equal protection under the U.S. Constitution." Newark Superior Officers, supra, 98 N.J. at 223, 486 A.2d at 311. The question that equal protection under the Fourteenth Amendment poses is whether the law "appropriately" excludes persons "to which the law, but for its limitations would apply." Ibid. The response is derived from "an analysis of the purpose and object of the enactment and whether the classification rests upon any rational or reasonable basis relevant to the purpose and object of the act." Paul Kimball, supra, 86 N.J. at 438, 432 A.2d at 40. The court must determine "whether there is a justifiable basis for the discrimination," on the understanding that "[a] classification will not be set aside if any state of facts reasonably may be conceived to justify it." Id. at 441, 432 A.2d at 42. The similarity of special legislation analysis to equal protection analysis means that "the Legislature has wide discretion in determining the perimeters of a classification." Id. at 446, 432 A.2d at 45. "[A]n adequate factual basis for the legislative judgment is presumed to exist." Id. at 446-47, 432 A.2d at 45.
There is a strong presumption against finding legislation unconstitutional. "[I]t is well-recognized that the courts do not act as a super-legislature," so statutes are presumed constitutional unless clearly repugnant to the Constitution. Newark Superior Officers, supra, 98 N.J. at 222, 486 A.2d 305. The party challenging a statute as unconstitutional must "demonstrate clearly that it violates a constitutional provision." Ibid. Under established principles of statutory interpretation, "if possible, legislation will be so read as to sustain its constitutionality." Holster v. Bd. of Trs. of Passaic County Coll., 59 N.J. 60, 66, 279 A.2d 798, 801 (1971).
Under any analysis, a statute that is otherwise valid is not unconstitutional as special legislation just because its classification or qualification provisions result at a particular time in "a class of one." Paul Kimball, supra, 86 N.J. at 448, 432 A.2d at 46; Township of Mahwah v. Bergen County Bd. of Taxation, 98 N.J. 268, 285, 486 A.2d 818, 827, cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985). "[A] statute is not special legislation merely because it addresses the needs of a particular municipality or serves a particular legislative purpose." Mahwah, supra, 98 N.J. at 285, 486 A.2d at 827. Singularity indicates special legislation only if some requirement, such as a cut-off date prior to the enactment, makes it impossible for any municipality to qualify even under the most unlikely of future developments, and if the requirement bears no conceivable relation to other classification *514 criteria, such as population or other surrogate measures of the need for the benefit or intervention that the legislation would confer. Id. at 293-94, 486 A.2d at 832-33; accord Town of Secaucus v. Hudson County Bd. of Taxation, 133 N.J. 482, 494-98, 628 A.2d 288, 294-96 (1993), cert. denied, 510 U.S. 1110, 114 S.Ct. 1050, 127 L.Ed.2d 372 (1994). As long as the enactment "on its face" allows other municipalities to qualify, it is irrelevant whether the Legislature was concerned with the needs of only one municipality when it acted. Mahwah, supra, 98 N.J. at 285, 486 A.2d at 827.
To uphold the presumption of constitutionality for a statute challenged as special legislation, the Court in Vreeland v. Byrne, 72 N.J. 292, 370 A.2d 825 (1977), set out a three-part test. The test requires determinations of "the purpose of the enactment and the subject matter with which it is concerned"; of whether "there are persons similarly situated to those embraced within the act, who, by the terms of the act, are excluded from its operation"; and of whether, "[a]s so applied, the resulting classification can be said to rest upon any rational or reasonable basis relevant to the purpose and object of the act." Id. at 298-301, 370 A.2d at 828-29; accord Newark Superior Officers, supra, 98 N.J. at 223, 486A.2d at 311.
The Court has characterized the question of whether a statute is general or special as "ultimately" being "a question of reasonableness." Newark Superior Officers, supra, 98 N.J. at 227, 486 A.2d at 313. The question "is a practical one varying with the facts in each case." Ibid. The challenger has the burden of showing that the classification that the statute affects is unreasonable, and when the reasonableness of the classification is "fairly debatable," a court must uphold it. Ibid.
Measured by this standard, the December 2002 amendments cannot be considered special legislation. MRERA, in general, and the sections that specifically concern school board governance in qualifying municipalities, in particular, address the twin evils of financially distressed municipalities and educationally distressed school systems. The Legislature has discerned a connection between these evils and has responded with a concerted attack that allows State financial and educational expertise to supplement State financial assistance. The financial health of municipalities is a basic concern of the State, as is the provision of a sound education for the residents of the municipality. A multi-faceted response to a multi-faceted problem is justifiable legislative action.
It is of no constitutional consequence that only the City of Camden currently satisfies the definition as a "qualifying municipality." The determinative factor is that municipalities other than Camden may qualify for the remedies allowed by MRERA. Plaintiffs' argument that the State would never let another municipality decline to the point of qualifying for this scheme is based on nothing more than plaintiffs' assumption that political "realism" would require such intervention. They offer no explanation of why the forces of political "realism" would compel the State to attempt actions to aid other municipalities that it was unwilling or unable to undertake for Camden. More importantly, this argument implicitly recognizes that the challenged provisions do not exclude other municipalities and their Type II school districts.
It is also of no constitutional consequence that the State may take over a failing school district, such as it has done in Newark, Jersey City and Paterson, pursuant to another legislatively authorized *515 scheme. See N.J.S.A. 18A:7A-15; N.J.A.C. 6:8-1.1 to -4.2. Having responded once to address the problem of school districts that are not accomplishing the constitutional mandate to provide a "thorough and efficient education," N.J. Const. art. VIII, § 4, ¶ 1, the Legislature should not be precluded from adopting a different or complementary response to the problem of troubled schools.
We also reject plaintiffs' argument that the challenged provisions of MRERA are unconstitutional due to the absence of any rational connection between school system dysfunction and general municipal dysfunction. The argument is unavailing. The Legislature is entitled to great deference in its perception of a relationship between the needs of a qualifying municipality and the needs of a school district that is already subject to level II monitoring. Similarly, its determination that a coordinated approach will yield measurable results indicative of municipal fiscal stability and educational progress is entitled to great deference particularly at a time when the State is committing significant resources to improving municipal and school district governance. Those perceptions are not irrational in themselves or devoid of logical connections to the legislative purposes of improving municipal governance, relieving citizen distress, encouraging private residential and economic development, and avoiding harm to those efforts that could arise from the failure to address concurrently the need for improved municipal and school district governance by means beyond those presently available. The challenged provisions of MRERA thus have a rational basis; their ultimate wisdom is not for this court to determine.
Plaintiffs' remaining arguments are equally unpersuasive because they are premised on the mistaken idea that the Legislature could not include a Type II school district in this remedial scheme unless it had proof that doing so would improve the education that the district imparted and any improvement could not occur under other programs of State supervision, in particular the level II supervision to which the Camden school district is already subject. The case law only requires that the response created by the Legislature to coordinate the State supervision of municipal governance and school board governance represents in any degree a "conceivable rational basis" for the challenged provisions. The December 2002 amendments unequivocally satisfy this test and plaintiffs' constitutional challenge must fail.

IV
Plaintiffs claim that the Governor's exercise of veto power over school board action pursuant to the MRERA is subject to the OPMA. They argue that when the Governor exercises such a veto he is acting as a member of the Camden school board, and that any action by a school board is an action of a public body that must comply with the OPMA. They argue further that it would be wrong for the Governor's veto power to change the inherent character of a school board as a public body accountable to its electorate.
The OPMA applies only to the "meetings" of a "public body." N.J.S.A. 10:4-9(a), -12(a). A "public body" is defined as "a commission, authority, board, council, committee or any other group of two or more persons organized under the laws of this State, and collectively empowered as a voting body to perform a public governmental function" with exceptions not relevant here. N.J.S.A. 10:4-8(a). The Governor is not a "public body" under the OPMA because a governor is a single person in whose actions no one is "empowered" *516 to participate "collectively." See N.J. Const. art. V, § 1, ¶ ¶ 1-15 (the Governor's enumerated powers do not involve any form of collective exercise). Furthermore, a gubernatorial veto pursuant to MRERA does not qualify as a "meeting" because the Governor undertakes this action in his capacity as the Chief Executive Officer of the State rather than as a member of a school board. N.J.S.A. 10:4-8(b); N.J.S.A. 52:27BBB-64(b).
We must recognize that the OPMA is a legislative initiative to enhance the ability of citizens to participate in the affairs of government. As such, it is within the power of the Legislature to determine the limits of the OPMA. We discern nothing within the OPMA which suggests that actions by the Governor implicating his authority as the Chief Executive Officer of this State fall with the purview of the OPMA.
Affirmed.
NOTES
[1] Level II monitoring occurs if the Commissioner of Education finds that a school district has deficiencies that keep it from satisfying the state "evaluation criteria" for providing "a thorough and efficient system of education." N.J.S.A. 18A:7A-14(a)(1). It is intended to address only those deficiencies, but the failure to make "reasonable progress" toward correcting them makes the district subject to level III monitoring. N.J.S.A. 18A:7A-14(b)(1),(2). Whether a district is in level II or level III, its continuing failure to correct the deficiencies will result in an examination of its "educational programs, fiscal practices, governance and management." N.J.S.A. 18A:7A-14(d),(e). If a hearing establishes that the district "has failed to take or is unable to take the corrective actions necessary to establish a thorough and efficient system of education, the commissioner shall recommend" that the State Board of Education remove the school board and replace it with a State-operated school district, in which the State would conduct all operations ordinarily within a school board's purview, as detailed in N.J.S.A. 18A:7A-34 to 52. N.J.S.A. 18A:7A-15.
[2] A citation to the session laws indicates that the statute has since been amended in a manner relevant to this appeal. The relevant amendments will be discussed together below.
[3] N.J.S.A. 10:4-6 to -21.