997 A.2d 1043

NEW JERSEY LAW ENFORCEMENT SUPERVISORS ASSOCIA-
TION, PLAINTIFF, AND NEW JERSEY LAW ENFORCEMENT
COMMANDING OFFICERS ASSOCIATION, PLAINTIFF–AP-
PELLANT, v. STATE OF NEW JERSEY, DEFENDANT–RE-
SPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 8, 2010—Decided June 21, 2010.

114

Before Judges LISA, BAXTER and ALVAREZ.

*Mario A. Iavicoli,* argued the cause for appellant (*Mr. Iavicoli,* attorney; *Frank M. Crivelli* and *Donald C. Barbati,* on the brief).

*Todd A. Wigder,* Deputy Attorney General, argued the cause for respondent (*Paula T. Dow,* Attorney General, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Mr. Wigder,* on the brief).

*Paul L. Kleinbaum,* argued the cause for amicus curiae New Jersey State Policemen's Benevolent Association (*Zazzali, Fagella, Nowak, Kleinbaum & Friedman,* attorneys; *Mr. Kleinbaum,* of counsel; *Edward M. Suarez, Jr.,* on the brief).

The opinion of the court was delivered by

LISA, P.J.A.D.

This appeal questions whether the police and firefighters paid convention leave statute, *N.J.S.A.* 11A:6–10,[1] is unconstitutional as special legislation or because it violates the equal protection rights of members of employee organizations not affiliated with the unions designated in the statute. The statute applies only to members of employee organizations affiliated with the State's two largest police unions and two largest firefighter unions. The challenge in this case was brought by two independent police unions. Accordingly, the relevant factual information in the record and our analysis are limited to the statutory provisions pertaining to police unions. We hold that the statute is not constitutionally infirm.

The statute at the center of this controversy provides:

A leave of absence with pay shall be given to employees who are duly authorized representatives of an employee organization defined as a "representative" in subsection e. of section 3 of P.L. 1941, c. 100 (C. 34:13A–3) *and affiliated with the New Jersey Policemen's Benevolent Association, Inc., Fraternal Order of Police, Firemen's Mutual Benevolent Association, Inc. or the Professional Fire Fighters Association of New Jersey* to attend any State or national convention of the organization, provided, however, that no more than 10 percent of the employee organization's membership shall be permitted such a leave of absence with pay, except that no less than two and no more than 10 authorized representatives shall be entitled to such leave, unless more than 10 authorized representatives are permitted such a leave of absence pursuant to a collective bargaining agreement negotiated by the employer and the representatives of the employee organization, and for employee organizations with more than 5,000 members, a maximum of 25 authorized representatives shall be entitled to such leave. The leave of absence shall be for a period inclusive of the duration of the convention with a reasonable time allowed for travel to and from the convention, provided that such leave shall

---

[1] In addition to *N.J.S.A.* 11A:6–10, the challenge in this case also pertains to a regulation corresponding to the statute, *N.J.A.C.* 4A:6–1.13, which contains substantially the same provisions. We also note that *N.J.S.A.* 11A:6–10 applies to civil service employees, and that a similar statute, containing substantially the same provisions, *N.J.S.A.* 40A:14–177, enacted in 1977, *see L.* 1977, *c.* 347, § 1, applies generally to all county and municipal employees. The analysis as to the validity of all three provisions is the same. For ease of discussion, we will generally refer in this opinion to only *N.J.S.A.* 11A:6–10, but our analysis and conclusion apply equally to the other provisions as well.

be for no more than seven days. A certificate of attendance at the convention shall, upon request, be submitted by the representative so attending.
[*N.J.S.A.* 11A:6–10 (emphasis added).]

The two unions that brought this action were the New Jersey Law Enforcement Supervisors Association (NJLESA) and the New Jersey Law Enforcement Commanding Officers Association (NJLECOA). They initiated the action in the Law Division, alleging that *N.J.S.A.* 11A:6–10 violates the New Jersey Constitution's ban on special legislation, *N.J. Const.* art. IV, § 7, ¶ 7, as well as violating the equal protection rights of their members. They sought a declaration that the statute and regulation were unconstitutional, or alternatively an order directing the State to award the union officials paid convention leave. The State's motion to transfer the matter to this court was granted. *See R.* 1:13–4(a); *R.* 2:2–3(a)(2). NJLESA withdrew its appeal on the eve of oral argument in this court,[2] leaving NJLECOA as the only appellant. However, to the extent necessary to set forth the relevant facts, we include NJLESA in our discussion.

NJLECOA is the sole and exclusive representative of law enforcement officers employed by the State of New Jersey holding the rank of captain or its equivalent.[3] NJLESA is the sole and exclusive representative of law enforcement officers employed by the State of New Jersey holding the rank of sergeant or its equivalent in certain units.[4] Since 2008, both unions have been

---

[2] Pursuant to the "Withdrawal and Dismissal of Notice of Appeal with Prejudice" filed by NJLESA on March 5, 2010, the appeal is dismissed as to NJLESA with prejudice and without costs.

[3] According to its website, NJLECOA represents "command law enforcement personnel in the employ of the State of New Jersey holding the rank of Captain or its equivalency in the classified career service." *See* commandingofficersnj.org/who_we_are.htm.

[4] According to its website, "[NJLESA] is an independent, law-enforcement labor union representing hundreds of State Law Enforcement Sergeants from the following units: NJ Department of Corrections, Division of Parole, Juvenile Justice Commission, Human Services Police, State Park Police, Campus Police,

independent, although before that time they had been affiliated with either the New Jersey Policemen's Benevolent Association, Inc. (PBA) or the Fraternal Order of Police (FOP).

The PBA represents about 32,000 law enforcement officers and the FOP represents more than 14,000 law enforcement officers throughout New Jersey, at all levels of government, state, county, and municipal. The PBA serves as the collective negotiations representative for more than 300 law enforcement units, and the FOP serves as the collective negotiations representative for 133 units. Only twenty-two law enforcement units are represented by independent labor organizations for collective negotiations purposes, including NJLECOA and NJLESA. Included within these numbers, the State of New Jersey employs about 8300 law enforcement officers; of those, about 7500 are represented by the PBA and FOP, and the remaining 800 are the sergeants and captains represented by NJLECOA and NJLESA.

On July 15, 2008, the presidents of NJLECOA and NJLESA sent a joint letter to the New Jersey State Office of Employee Relations (OER).[5] They requested paid leave for sixteen officers and trustees of the two unions (seven from NJLECOA, and nine from NJLESA) to attend as delegates a state convention jointly hosted by the two unions in Atlantic City from Monday, August 25 to Friday, August 29, 2008, plus reasonable travel time. By letter of July 29, 2008, OER denied the request, noting that the unions were not affiliated with any of the organizations specified in *N.J.S.A.* 11A:6–10, or its corresponding regulation, *N.J.A.C.* 4A:6–1.13. The two unions then brought this action.

---

Palisades Interstate Parkway Police, Division of Fish and Wildlife." *See* njlesa.com (follow "About Us" hyperlink).

[5] The OER, in the Office of the Governor, is primarily responsible for the labor relations function between the State of New Jersey, as employer, and its unionized workforce, with oversight responsibility over the labor relations function at all state departments, agencies, and colleges.

NJLECOA argues that *N.J.S.A.* 11A:6–10 is "special legislation" in violation of article IV, section 7, paragraph 7 of the New Jersey Constitution, which provides that, "[n]o general law shall embrace any provision of a private, special or local character." It argues that the statute constitutes special legislation because its limitation to the four named unions "is without a meaningful and rational reason, and, thus, arbitrarily exclusive." For the same reason, it also argues that the statute violates the Federal Equal Protection Clause. *U.S. Const.* amend. XIV, § 1.

A three-prong test is used to evaluate whether a law constitutes special legislation. The court must determine: (1) the purpose and object of the enactment; (2) whether it excludes some who should be included; and (3) whether, as applied, the resulting classification rests upon any rational or reasonable basis relevant to the purpose of the statute. *In re Hunterdon County,* 369 *N.J.Super.* 572, 589, 850 *A.*2d 494 (App.Div.), *certif. denied,* 182 *N.J.* 139, 861 *A.*2d 844 (2004). "In other words, 'the test of special legislation requires [consideration of] whether any person or entity excluded by the statutory classification should have been included because there was no rational explanation for the exclusionary classification.' " *Ibid.* (quoting *City of Jersey City v. Farmer,* 329 *N.J.Super.* 27, 43, 746 *A.*2d 1018 (App.Div.), *certif. denied,* 165 *N.J.* 135, 754 *A.*2d 1211 (2000)).

Review of the constitutionality of a statute begins with the well-settled principle that all statutes are entitled to a presumption of validity that is overcome only by a showing that the statute is "clearly repugnant to the Constitution." *Newark Sup. Officers Ass'n. v. City of Newark,* 98 *N.J.* 212, 222, 486 *A.*2d 305 (1985); *N.J. State Firemen's Mut. Benevolent Ass'n v. N. Hudson Reg'l Fire & Rescue,* 340 *N.J.Super.* 577, 588, 775 *A.*2d 43 (App.Div.), *certif. denied,* 170 *N.J.* 88, 784 *A.*2d 721 (2001). The Legislature has a broad range of discretion in determining classifications and distinctions, which will be presumed to rest upon a rational basis if there is any conceivable set of facts which can

support them. *Jordan v. Horsemen's Benevolent & Protective Ass'n*, 90 *N.J.* 422, 433, 448 *A.*2d 462 (1982); *Harvey v. Bd. of Chosen Freeholders*, 30 *N.J.* 381, 390, 153 *A.*2d 10 (1959). The conceivable set of facts need not be explicitly stated in the record. *Harvey, supra*, 30 *N.J.* at 390, 153 *A.*2d 10. Stated differently, a general law is one that equally affects all of a group who, in light of the purpose of the statute, are distinguished by sufficiently marked and important characteristics to make them a class by themselves. *Camden City Bd. of Educ. v. McGreevey*, 369 *N.J.Super.* 592, 604, 850 *A.*2d 505 (App.Div.2004). The challenger bears the burden of showing that the classification drawn by the statute is unreasonable; if the classification is "fairly debatable," a court must uphold it. *Id.* at 607, 850 *A.*2d 505.

NJLECOA relies almost exclusively on *North Hudson, supra*, in support of its special legislation argument. In *North Hudson*, the public employer denied paid convention leave to members of several local Firemen's Mutual Benevolent Association (FMBA) unions. *N. Hudson, supra*, 340 *N.J.Super.* at 581, 775 *A.*2d 43. The unions filed a complaint seeking injunctive relief pursuant to *N.J.S.A.* 11A:6–10. *Ibid.* The public employer argued that the statute was unconstitutional as special legislation and as an unconstitutional delegation of legislative authority to the FMBA. *Id.* at 582, 584–85, 775 *A.*2d 43.

At the time *North Hudson* was decided in 2001, *N.J.S.A.* 11A:6–10 included more unions eligible for paid convention leave than the four unions named in the current version of the statute. *Id.* at 581–82 n. 2, 775 *A.*2d 43. Critically, with respect to the special legislation issue, the 2001 version named an ethnically oriented organization as eligible for paid convention leave (the Italian American Police Society of New Jersey). *Ibid.* Further, and critical to the unconstitutional delegation of legislative authority issue, unlike the current version, the 2001 version provided no limitation on the number of members from each organization which could receive paid convention leave, nor did it limit the

length of time for which paid leave was authorized.[6] *Ibid.*

The trial judge found the statute arbitrarily exclusive for granting convention leave to organizations of certain ethnic groups while excluding others, thus rendering it unconstitutional as special legislation. *Id.* at 587–88, 775 *A.*2d 43. We affirmed. Applying the three-prong special legislation test, we first noted that, "[n]either the subject statutes nor their legislative history provide an express statement of purpose." *Id.* at 589, 775 *A.*2d 43. The trial judge had found that there were two potential purposes of the statute: (1) to provide an employment benefit making public employment in such areas more attractive; and (2) to serve an educational purpose for which a public employer might otherwise be responsible. *Ibid.* We expressed reservation on both points, but accepted them as a basis for analysis. *Ibid.* We then analyzed the special legislation issue as follows:

> The critical inquiry today is whether there is any rational basis for inclusion of certain ethnic organizations, while excluding others. We agree with the trial judge's conclusion that "[i]t is difficult to project any rational purpose or object to these statutes without coming to the conclusion that they are arbitrarily exclusive." Once the Legislature has chosen to confer a benefit such as paid convention leave there is no rational basis, absent clear standards, for including certain fraternal organizations and excluding others.

---

[6] At the time *North Hudson* was decided, the statute provided:

> A leave of absence with pay shall be given to every employee who is a duly authorized representative of the New Jersey Patrolmen's Benevolent Association, Inc., Fraternal Order of Police, Firemen's Mutual Benevolent Association, Inc., the Fire Fighters Association of New Jersey, the New Jersey Law Enforcement Supervisors Association, the New Jersey Superior Officers Law Enforcement Association, the New Jersey Superior Officers Law Enforcement Association–Captains Unit, the International Association of Women Police or the New Jersey State Association of Chiefs of Police, or to any corrections officer who is a member of the *Italian American Police Society of New Jersey* to attend any State or national convention of the organization. The leave of absence shall be for a period inclusive of the duration of the convention with a reasonable time allowed for travel to and from the convention. A certificate of attendance at the convention shall, upon request, be submitted by the representative so attending.
>
> [*See N. Hudson, supra,* 340 *N.J.Super.* at 581–82 n. 2, 775 *A.*2d 43 (emphasis added).]

[*Ibid.*]

Contrary to NJLECOA's argument, the special legislation determination in *North Hudson* was based on the presence in the 2001 statute of the ethnically oriented organization, not the inclusion of some but not other law enforcement and firefighter organizations. This is evident because we framed the "critical inquiry" in reference to the inclusion and exclusion of "certain ethnic organizations." *Ibid.* Further, after finding that the 2001 statute was also unconstitutional for improperly delegating to the covered organizations the determination of how many representatives could attend conventions and for how long, *id.* at 592–95, 775 *A.*2d 43, we concluded that the statute could not be rescued by "judicial surgery." *Id.* at 595, 775 *A.*2d 43. While that approach could be considered to alleviate the special legislation infirmity, it could not cure the improper delegation infirmity. *Ibid.* In our discussion of that issue, we described the possible judicial surgery that could be used to eliminate the special legislation feature of the statute as "voiding subsequent amendments providing convention leave to certain ethnically oriented fraternal organizations." *Ibid.* Therefore, *North Hudson* is not dispositive of the issue before us.

In the aftermath of the *North Hudson* decision the Legislature amended *N.J.S.A.* 11A:6–10 to address the improper delegation infirmity by inserting a limit on the number of representatives authorized to attend conventions and imposing a seven day limit. Similar amendments were made to *N.J.A.C.* 4A:6–1.13, and *N.J.S.A.* 40A:14–177. To address the special legislation infirmity, the provisions were further amended to revert to listing only the two major statewide law enforcement and two major statewide firefighters unions that were contained in the original 1955 enactment of *N.J.S.A.* 11:26C–4, the predecessor to *N.J.S.A.* 11A:6–10. *L.* 1955, *c.* 188, § 1.[7] Our task is to determine whether, in its

---

[7] The original 1955 statute covered "the New Jersey Patrolmen's Benevolent Association, Inc., Fraternal Order of Police, Firemen's Mutual Benevolent Association, Inc., and the Uniformed Firemen's Association." The second and third organizations are identical to those named in the current version of *N.J.S.A.*

current form, the statute can withstand a special legislation challenge.

In applying the three prong test, we must first identify the purpose or object of the statute. The statute is silent as to its purpose. Our independent review of the legislative history of the original enactment in 1955 and its several amendments over the years confirms the observation in *North Hudson* that no express statement of purpose can be found through those sources. *N. Hudson, supra,* 340 *N.J.Super.* at 589, 775 *A.*2d 43.

In *North Hudson,* one of the suggested purposes was "to serve an educational purpose for which a public employer might otherwise be responsible." *Ibid.* In this case, the State amplifies this proposition by suggesting that "the Legislature could have determined that it is important for law enforcement officials to have continuing access to training and education, including programs available at labor organization conventions." Amicus informs us that the State PBA conventions include presentations by political leaders and representatives of state agencies and other organizations who provide training and education on such matters as health and safety and collective bargaining. Amicus suggests that this "fills a gap which is not provided by public employers." Synthesizing these plausible propositions, we are satisfied that the purpose or object of the statute is to provide a forum for relevant training and education to law enforcement officers, through their authorized representatives, as a supplement to that provided by their public employers.

---

11A:6–10. The fourth, the Uniformed Firemen's Association, is the predecessor to the fourth organization named in the current statute, the Professional Firefighters Association of New Jersey, having changed its name as such in 1996. *See* pfanj.org/about_us/about_us.htm. The first, the New Jersey Patrolmen's Benevolent Association, Inc., is apparently the same organization first named in the current statute, the Policemen's Benevolent Association, Inc., as evidenced by the fact that the post-*North Hudson* amendments to *N.J.S.A.* 11A:6–10 changed the word "Patrolmen's" to "Policemen's," *L.* 2001, *c.* 309, § 1, and by the fact that the New Jersey Police Training Commission uses both names interchangeably. *See* http://www.state.nj.us/lps/dcj/njptc/commbr.htm.

We next consider whether the statute excludes some who should be included. NJLECOA argues that the educational purpose is equally applicable to members of independent law enforcement unions. While that is true, two significant characteristics distinguish the unions specified in the statute and the NJLECOA. The PBA and FOP represent about 46,000 members statewide serving at all three levels of government, compared to perhaps a few hundred [8] members in a local union, all of whom serve at one level of government. The vast difference in size and diversity sufficiently distinguishes the groups excluded. *See Newark Sup. Officers Ass'n, supra*, 98 *N.J.* at 224, 486 *A.2d* 305 (reasoning that the substantially greater population and size of the police forces in Newark and Jersey City, compared to New Jersey's other large cities, was sufficient to distinguish those two cities from all others under the second prong of the special legislation analysis); *Brown v. N.J. Dep't of Treasury*, 356 *N.J.Super.* 71, 86, 811 *A.2d* 501 (App.Div.2002) (finding, in special legislation analysis, that statute providing enhanced retirement benefits to members of the Police and Firemen's Retirement System who retired after April 1, 1991 did not exclude a class of persons upon whom it would otherwise operate).

■ Under the third prong, we must determine whether the resulting classification rests upon any rational or reasonable basis relevant to the purpose of the statute. To satisfy this test, a conceivable set of facts must exist to support a rational nexus between the statute's purpose or object and the method chosen by the Legislature to achieve it. Thus, if the differences in size and diversity among the included and excluded groups constitute sufficiently marked and important characteristics to render the

---

[8] The record reveals that in NJLESA's 2008 election to disaffiliate with the FOP, NJLESA, representing sergeants, had 717 eligible voters. The record does not expressly reflect the size of the membership of NJLECOA, which represents captains. However, based on the undisputed fact asserted by the State that the two unions have a combined membership of about 800, it is reasonable to infer that NJLECOA has about 100 members.

statutory classification at least "fairly debatable," the third prong is satisfied. *McGreevey, supra,* 369 *N.J.Super.* at 607, 850 *A.2d* 505.

The State and Amicus persuasively argue that the Legislature could have concluded that the chosen classification would provide an efficient and cost effective means by which to achieve its educational purpose. Unquestionably, that purpose serves a legitimate state interest. The PBA and FOP represent by far the greatest number and widest range of law enforcement interests at all levels of government. Their conventions are large and, as the State suggests, "educational programs available at PBA and FOP conventions, in contrast with smaller organizations, would cater to the widest set of law enforcement interests, both inside and outside government, and attract the most diverse resources to deliver those programs."

It stands to reason that a large convention would have the capacity and likelihood of providing broader and better educational programs than a small gathering such as the sixteen-member, five-day joint convention of the NJLECOA and NJLESA. The Legislature could have reasonably determined that the public cost of paid leave for attendance at the former is justified, but not at the latter. The legislative drawing of a dividing line to conserve fiscal resources serves a valid state interest. *See Brown, supra,* 356 *N.J.Super.* at 85, 811 *A.2d* 501. That interest is reasonably served by the line drawn here. The probable worth of the educational opportunities provided at the two types of conventions is qualitatively different. The distinction between the two is therefore not an arbitrary one.

We accordingly conclude that the classification prescribed in *N.J.S.A.* 11A:6–10 bears a rational and reasonable relationship to the educational purpose of the statute. The presumption of validity is not overcome. The statute is not unconstitutional as special legislation.

We can dispose quite summarily of NJLECOA's equal protection argument. NJLECOA does not contend that the statute's classification implicates any fundamental right, suspect class, or semi-suspect class so as to trigger strict or intermediate scrutiny. *See Romer v. Evans*, 517 *U.S.* 620, 631, 116 *S.Ct.* 1620, 1627, 134 *L.Ed.*2d 855, 865 (1996). Therefore, the rational basis test applies, and the statute will be upheld as long as the classification drawn bears a rational relationship to a legitimate state interest. *Ibid.* In these circumstances, " '[t]he test of whether a law constitutes special legislation is essentially the same as that which determines whether it affords equal protection of the laws.' " *Phillips v. Curiale*, 128 *N.J.* 608, 627, 608 *A.*2d 895 (1992) (quoting *Twp. of Mahwah v. Bergen County Bd. of Taxation*, 98 *N.J.* 268, 285, 486 *A.*2d 818 (1985)). For the reasons we have discussed, *N.J.S.A.* 11A:6–10 passes the rational basis test and therefore defeats NJLECOA's equal protection claim.

Affirmed.