924 A.2d 550

TROOPER RONALD ROBERTS, JR., PETITIONER–APPELLANT,
v. STATE OF NEW JERSEY DIVISION OF STATE POLICE,
RESPONDENT–RESPONDENT.

Argued February 13, 2007—Decided June 21, 2007.

*Kevin P. McCann* argued the cause for appellant (*Chance & McCann,* attorneys; *Mr. McCann* and *Shirley A. Naylor,* of counsel and on the briefs).

*Desha L. Jackson,* Deputy Attorney General, argued the cause for respondent (*Stuart Rabner,* Attorney General of New Jersey, attorney; *Linda Vele Alexander,* Deputy Attorney General, of counsel and on the letter brief).

Justice HOENS delivered the opinion of the Court.

This matter requires us to consider the statutory framework governing timeliness of internal discipline of State Troopers. More specifically, we are called upon to consider timeliness in the context of disciplinary complaints based on acts that have been the subject of both internal and criminal investigations.

## I.

### A.

In March 2003, State Trooper Ronald Roberts, Jr. was charged with assault and harassment, and served with a temporary restraining order pursuant to the Prevention of Domestic Violence Act, *N.J.S.A.* 2C:25–17 to –35, by his girlfriend Dina Colasurdo. Although Roberts admits that the rules and regulations governing State Troopers required him to report that incident within four hours of the event, he failed to do so until six days later.

As a part of the information Colasurdo gave to local police in connection with her domestic violence complaint, she asserted that Roberts had broken her arm in an incident during the previous October. Because of the nature of Colasurdo's allegations, the State Police were advised of the charges. The State Police therefore began an internal investigation on the day that Colasurdo filed her complaint.

During that investigation, Colasurdo revealed that Roberts had planned to file a claim for her broken arm with his homeowners' insurance company to seek coverage for her medical bills. In doing so, Roberts would claim that Colasurdo had been injured in a fall down a flight of stairs rather than in the domestic violence incident. Because that action would constitute an effort to defraud the insurer, the State Police suspended its internal disciplinary investigation and turned the matter over to the Division of Criminal Justice, Office of Insurance Fraud Prosecutor (OIFP) to conduct a criminal investigation.

Eventually, the charges relating to the domestic violence complaint were dismissed, but the insurance fraud investigation continued. On December 22, 2003, the Division of Criminal Justice advised the State Police in writing that OIFP had completed its investigation, had determined that there was insufficient evidence to proceed, and would therefore decline to prosecute Roberts. The State Police then resumed its internal investigation, which included a January 26, 2004, interview of Roberts. On February 17, 2004, the report of the internal investigation was forwarded to the Office of the Superintendent of the State Police. Three days later, the Superintendent authorized disciplinary charges including a written reprimand and a suspension. That disciplinary notice was served on Roberts on March 1, 2004.

## B.

Roberts promptly challenged the disciplinary action,[1] asserting that it was untimely. He contended that the governing statute, *N.J.S.A.* 53:1–33, imposes a limit of forty-five days on the filing of any disciplinary charge, and that because the charge against him was filed more than forty-five days after the disposition of his criminal investigation, it was barred.

In proceedings before the Appellate Division, the State Police disputed[2] that interpretation of the statute. The State Police

---

[1] Roberts first filed a complaint in the Law Division. That matter was transferred to the Appellate Division as a result of the jurisdictional motion of the State Police.

[2] The State Police moved to dismiss the matter on the ground that Roberts had failed to exhaust his administrative remedies. The State Police argued that, in light of the fact that Roberts had not challenged the disciplinary action through the requisite administrative channels, there was no final agency decision that the Appellate Division could review. The court rejected that assertion, pointing out that because the issue presented was a question of law, the exhaustion doctrine did not apply. *Roberts v. Div. of State Police*, 386 *N.J.Super.* 546, 550–51, 902 *A.*2d 304 (App.Div.2006) (citing *Abbott v. Burke*, 100 *N.J.* 269, 298, 495 *A.*2d 376 (1985)). The State Police did not cross-petition for our review of this point as a result of which we will not consider it.

pointed out that the statutory time limit of *N.J.S.A.* 53:1–33 begins to run when the Superintendent, who is the person authorized to file a charge, learns of "sufficient information" to support a charge and that the time for filing a charge is suspended during a criminal investigation. The State Police argued that, as a result, the forty-five day period did not begin to run until the Superintendent received the report of the internal investigation, which had resumed after OIFP declined to prosecute Roberts. Based on that analysis, the State Police argued that the charges against Roberts were not time-barred.

In a published decision, the Appellate Division rejected the timeliness challenge raised by Roberts and remanded the matter for further proceedings in connection with the still-pending disciplinary charges. *Roberts v. Div. of State Police,* 386 *N.J.Super.* 546, 551–53, 902 *A.*2d 304 (App.Div.2006). We granted Roberts's petition for certification, 188 *N.J.* 577, 911 *A.*2d 69 (2006), to consider the meaning and interpretation of the statutory time periods governing State Police discipline.

## II.

We begin our analysis with the language of the statute that is at the heart of this dispute. *N.J.S.A.* 53:1–33, governing suspension and removal of State Troopers, provides in relevant part as follows:

> A complaint charging a violation of the internal rules and regulations established for the conduct of the State Police shall be filed no later than the 45th day after the date on which the person filing the complaint obtained sufficient information to file the matter upon which the complaint is based.... The applicable time limit shall not apply if an investigation of an officer or trooper for a violation of the internal rules or regulations of the law enforcement unit is included directly or indirectly within a concurrent investigation of that person for a violation of the criminal laws of this State. The applicable time limit shall begin on the day after the disposition of the criminal investigation....
>
> A failure to comply with the provisions of this section concerning the service of the complaint and the time within which a complaint is to be filed shall require a dismissal of the complaint.
>
> [*Ibid.*]

The competing positions of the parties to this appeal require that we analyze the meaning and operation of the words governing time limitations for filing disciplinary complaints following criminal investigations.

In interpreting a statute, our objective is always to understand the Legislature's intent. *See Marshall v. Klebanov,* 188 *N.J.* 23, 36, 902 *A.*2d 873 (2006). In doing so, we first look to the plain language of the statute. *See DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). If the meaning is clear from the language itself, we apply the statute accordingly. *See Hubbard v. Reed,* 168 *N.J.* 387, 392, 774 *A.*2d 495 (2001).

However, when the language used by the Legislature is susceptible to multiple interpretations, we may consider other sources to assist us in discerning the Legislature's intent. *See Burns v. Belafsky,* 166 *N.J.* 466, 473, 766 *A.*2d 1095 (2001). Those sources include the legislative history, sponsors' statements, committee reports, and other extrinsic evidence that may assist us. *See DiProspero, supra,* 183 *N.J.* at 492–93, 874 *A.*2d 1039 ("[I]f there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.' ") (quoting *Cherry Hill Manor Assocs. v. Faugno,* 182 *N.J.* 64, 75, 861 *A.*2d 123 (2004)).

Considering this statute in light of the arguments advanced by the parties, the meaning of the language setting forth time limits is not plain. As a result, we are required to resort to extrinsic aids for interpretation. In particular, our review of the legislative history is instructive in this case, because the operative language of the statute is different from that which was initially proposed. When the bill that would eventually become *N.J.S.A.* 53:1–33 was first passed by the Legislature and sent to the Acting Governor, it stated:

> A complaint charging a violation of the internal rules and regulations established for the conduct of the State Police shall be filed no later than the 45th day after the date on which the person filing the complaint obtained sufficient information to file

the matter upon which the complaint is based. The *45–day time limit* shall not apply if an investigation of an officer or trooper for a violation of the internal rules or regulations of the law enforcement unit is included directly or indirectly within a concurrent investigation of that person for a violation of the criminal laws of this State. The *45–day limit* shall begin on the day after the disposition of the criminal investigation.

[S. 2353, 209th Leg., 2d Reg. Sess. (introduced May 14, 2001); Assemb. 3615, 209th Leg., 2d Reg. Sess. (introduced June 4, 2001) (emphasis added).]

Acting Governor DiFrancesco conditionally vetoed this version of the bill. *Acting Governor's Conditional Veto to Senate Bill No. 2353* (Jan. 7, 2002). In this conditional veto message to the Legislature, the Acting Governor expressed his concerns about the need to balance the potential for undue delay in bringing charges with the interest in "conducting a thorough and complete investigation as a precursor to filing any such charges, as well as the public interest in assuring appropriate discipline is provided for substantiated misconduct." *Id.* at 1. In an apparent attempt to meet this challenge and create flexibility in the time limit on filing charges, the Acting Governor recommended insertion of the "applicable" or "applicable time" language into the statute in lieu of the two latter references to forty-five days. *Id.* at 2.

The Legislature incorporated the suggested change, which is reflected in the statute's current language. *See N.J.S.A.* 53:1–33. We discern from this expression on the part of the Acting Governor, and from the Legislature's adoption of his proposed revisions, an intention to avoid a rigid time requirement in favor of sufficient flexibility to permit the internal investigation to be conducted following the completion of the criminal process.

At the same time, this legislative history compels us to give less weight to the statement of the sponsors of the original bill. *See* Senate Law & Public Safety Committee, *Statement to Senate Bill No. 2353* (May 31, 2001); Assembly Law & Public Safety Committee, *Statement to Senate Bill No. 2353* (Dec. 13, 2001). Although it is true that the sponsors expressed their intention to create protections for State Police that would mirror those afforded to county and municipal police, *see N.J.S.A.* 40A:14–147, and although the original bill included the forty-five day time limitation,

the eventual amendment of the bill in compliance with the Acting Governor's veto message limits the usefulness of those expressions of intent. Nor, for that matter, is the reference to *N.J.S.A* 40A:14–147 helpful in light of the fact that this Court has not had the opportunity to consider how the time limits in that statute would be applied to a municipal police officer whose criminal investigation results in a decision not to prosecute.

■ We therefore conclude, based on this analysis of the relevant legislative history, that the Legislature intended to balance three competing considerations. Those considerations are the need for a complete and thorough internal investigation, the need for deference to a related criminal investigation, and the interests of the particular trooper to be free of undue delay in being charged. With this background in mind, we begin our interpretation of the statute governing State Police discipline.

### III.

■ In his arguments before the Appellate Division and in his petition for certification, Roberts voiced a variety of interpretations of the meaning of the statute's time frame. First, he asserted that the State Police had sufficient information on which to file charges on the day it received the domestic violence incident report from local police. In the alternative, Roberts argued that the State Police had sufficient information to file the charges as of the date when he filed his untimely self-report of the domestic violence incident. Third, in light of the statute's reference to the effect of a criminal investigation, Roberts argued that the time for filing charges "begins the day after the disposition of a concurrent criminal investigation regardless of whether the Superintendent has obtained sufficient information to file the matter upon which the complaint is based." Each of these assertions, if correct, would require dismissal of these charges. *See N.J.S.A.* 53:1–33.

■ We begin with the observation that it is not the happening of the event giving rise to discipline that starts the clock for purposes of evaluating timeliness, but the receipt of "sufficient information" by the one who is authorized to file the charge that is significant. *See ibid.* As our Appellate Division has previously noted, only the Superintendent can file a charge, and his receipt of the investigative report satisfies the statutory requirement of the receipt of sufficient information. *See Div. of State Police v. Maguire,* 368 *N.J.Super.* 564, 570, 847 *A.*2d 614 (App.Div.) (citing *N.J.S.A.* 53:1–10), *certif. denied,* 181 *N.J.* 545, 859 *A.*2d 690 (2004); *see also DeBenedictis v. State,* 381 *N.J.Super.* 233, 237–38, 885 *A.*2d 491 (App.Div.2005) (similarly interpreting expanded 120–day time frame applicable to certain charged offenses).

Ordinarily, because conducting a complete and thorough investigation into incidents that might give rise to disciplinary charges serves the interests of the particular trooper, the State Police, and the people of our State, timeliness of a charge is judged based upon when the Superintendent has received the report of the investigation. Therefore, had there been no intervening criminal investigation into the allegations that arose from the domestic violence incident, the disciplinary charges would have been timely if filed within forty-five days of the date when the Superintendent received sufficient information, in the form of an investigative report, to support the charges arising from Roberts's failure to self-report.

However, the statute creates a different time frame in any case in which the subject matter of the investigation "is included directly or indirectly within a concurrent [criminal] investigation." *N.J.S.A.* 53:1–33. In that situation, the statute provides that the "applicable time limit shall begin on the day after the disposition of the criminal investigation." *Ibid.*

Roberts argues that, in this context, "applicable time limit" means forty-five days. He reasons that, regardless of the complexity or outcome of the internal investigation, and notwithstanding the need for a thorough and complete investigation as a

precondition to filing charges, any and all disciplinary charges must be filed within forty-five days of the disposition of the criminal matter. The implication, of course, of that argument is that the criminal investigation will always yield sufficient information, which will be known to the Superintendent, and on which the internal disciplinary charges can be based.

Roberts's interpretation, however, would impose a time limit unrelated to the statute's intent that there be a complete and thorough investigation. It would potentially prevent the State Police from conducting as thorough an internal investigation in circumstances giving rise to criminal investigations as in those with no criminal implications.

The fallacy of that analysis can be no more apparent than it is in this record. Here, the internal investigation was suspended during the criminal investigation. Ultimately, Roberts was not subject to criminal charges, because OIFP concluded there was a lack of sufficient evidence. At that point, the internal investigation was resumed. That investigation culminated in an interview of Roberts that the State Police asserts was needed in order for its investigation to be both thorough and complete. Within days of that interview, the investigative report was finalized and forwarded to the Superintendent, and the charges were authorized. Were we to adopt Roberts's reasoning, however, we would require charges to be filed prior to the time when Roberts would have been interviewed.

We do not understand the statute's time frame to require the filing of charges within forty-five days of the completion of the criminal matter when the criminal investigation has ended in a decision not to proceed. We decline to interpret the statute to require the Superintendent to conduct his investigation in an abbreviated manner simply to meet a deadline over which he had no control. Rather, in light of the legislative history, we interpret the reference to the "applicable time frame" to subsume the earlier reference to the Superintendent's receipt of sufficient information on which to base a charge. We agree with the

observation by Judge Payne, writing for the Appellate Division in this case, that

[i]t would be illogical for the Legislature to have provided the necessary investigative period to determine whether disciplinary charges should issue when no criminal conduct has been alleged, but to have shortened that period when potential criminal conduct is under investigation. We decline to infer an intent to achieve such an unreasonable result.

[*Roberts, supra,* 386 *N.J.Super.* at 552–53, 902 *A.2d* 304 (citing *DeLisa v. County of Bergen,* 165 *N.J.* 140, 147, 755 *A.2d* 578 (2000); *State of New Jersey in the Interest of S.S.,* 367 *N.J.Super.* 400, 406, 842 *A.2d* 904 (App.Div.2004), *aff'd o.b.,* 183 *N.J.* 20, 869 *A.2d* 875 (2005)).]

Simply put, we interpret the statute to mean that once the criminal investigation has ended with a decision not to prosecute, disciplinary charges must be filed "no later than the 45th day after the date on which [the Superintendent] ... obtained sufficient information" to file those charges, *see N.J.S.A.* 53:1–33, as measured by his receipt of the investigative report.

Here we do not confront a situation in which an internal investigation was unnecessarily delayed or protracted, but only one that was required, in fairness to this trooper, to be held in abeyance during the investigation by the OIFP. The decision to await completion of the interview of this trooper as a component of that internal investigation was certainly appropriate in the interests of fairness and completeness. The prompt completion of the investigation and the Superintendent's decision, made within days of receiving the investigative report, to file disciplinary charges against Roberts is fully in compliance with the statute's mandates about timeliness.

## IV.

The judgment of the Appellate Division is affirmed and the matter is remanded for further proceedings consistent with this opinion.

*For affirmance and remandment*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.