GILSON, J.A.D.
*306 *482 This appeal involves the interpretation of two statutes concerning the right of Camden citizens to vote on the classification of their school district. That vote will determine whether members of the Camden City Board of Education (Board) are elected or appointed by the mayor. Plaintiffs contend that a vote on that issue was required in April 2014, under a 2010 amendment to the Municipal Rehabilitation and Economic Recovery Act (MRERA), N.J.S.A. 52:27BBB-63.1(c). Defendants counter that because the school district was placed into full State intervention in 2013, the classification vote is not required until the district satisfies certain "performance indicators" under the Quality Single Accountability Continuum Act (QSAC), N.J.S.A. 18A:7A-49(e). MRERA and QSAC contain provisions that set forth different frameworks for school district classification votes. Accordingly, we must determine which statutory framework governs.
We hold that the 2010 amendment to MRERA governs because its language is clear in granting Camden citizens the right to a school district classification vote, and nothing in QSAC restricts that right. Significantly, granting Camden citizens the right to a school district classification vote does not interfere with the State's full intervention because the Board will continue to serve in an advisory role until the conditions of QSAC are satisfied. Accordingly, *483 we reverse the trial court's August 15, 2016 order dismissing plaintiffs' complaint. We remand with the direction that the trial court conduct a hearing within thirty days to determine when the school district classification vote will be held.
I.
The material facts are not in dispute. In 2002, the Legislature enacted MRERA, N.J.S.A. 52:27BBB-1 to -79. That statute allowed the State to appoint an "overseer" or "chief operating officer" (COO) to control the governance of municipalities experiencing long-term fiscal distress. N.J.S.A. 52:27BBB-7(a). Under MRERA, the State can effectively take control of a municipality with the goal of restoring fiscal stability and, thereafter, returning governance to local control. N.J.S.A. 52:27BBB-2(o).
MRERA also authorized "limited school district oversight" if the district is contiguous with the municipality and was already subject to certain levels of State monitoring. N.J.S.A. 52:27BBB-2.1(d), -4(d), -63; see also Camden City Bd. of Educ. v. McGreevey, 369 N.J. Super. 592, 597-600, 850 A.2d 505 (App. Div. 2004) (describing some of the legislative history of MRERA).[1]
*307 In October 2002, shortly after MRERA became effective, the State appointed a COO to oversee Camden's fiscal and budgetary affairs. Before the State implemented its oversight of Camden under MRERA, the school district had been classified as a Type II district, which meant that members of the Board were elected. N.J.S.A. 18A:9-3 ; N.J.S.A. 18A:12-11. Once Camden was placed under the oversight of the State-appointed COO, however, the Board's powers were limited. Under MRERA, all actions of the Board were subject to gubernatorial veto. N.J.S.A. 52:27BBB-64(b). In addition, the governor had the right to appoint three new *484 Board members and, thereafter, as existing Board members' terms expired, either the governor or mayor made replacement appointments. N.J.S.A. 52:27BBB-63.
In 2010, the Legislature amended MRERA to restore certain local control to municipalities being overseen by the State. N.J.S.A. 52:27BBB-63.1. At that time, Camden was the only municipality operating under MRERA. Accordingly, then-Governor Corzine referred to the amendment as the "Camden Freedom Act."
The 2010 amendment to MRERA added new provisions for affected school districts. One of the new statutory provisions directed that a school district contiguous with a municipality under MRERA would become a Type I district "upon the commencement of the economic recovery term ...." N.J.S.A. 52:27BBB-63.1(a) ; see also N.J.S.A. 52:27BBB-3 ("Economic recovery term means the period commencing with the expiration of the term of the [COO] and terminating [ten] years thereafter.").
Another provision stated that "[a]t the April school election in the fourth school year following the commencement of the economic recovery term[,]" there would be a vote on "the classification status of the district as a Type I or Type II district ...." N.J.S.A. 52:27BBB-63.1(c). Thus, once the economic recovery term commenced, the school district would be converted to a Type I district, with school board members appointed by the mayor. Four years later, the voters would have the opportunity to decide if the school district should remain a Type I district or transition to a Type II district, where voters would elect school board members.
On January 18, 2010, which was the same day that the amendment to MRERA passed, the term of the State-appointed COO expired and Camden commenced economic recovery. Accordingly, the vote on the classification of the Camden school district was to be held in April 2014.
*485 Separate from the State's oversight of Camden under MRERA, the State Commissioner of Education (Commissioner) filed an order to show cause in March 2013, seeking to implement full State intervention over the Camden school district under QSAC. Shortly thereafter, the Board entered into a consent decree placing the Camden school district into full State intervention, effective June 25, 2013. Under QSAC's provisions for full intervention, the State Board of Education was authorized to appoint its own superintendent and other "highly skilled professionals" to provide "technical assistance to the district in implementing its improvement plan" and "direct oversight ... regarding the quality performance indicators" set forth in QSAC. N.J.S.A. 18A:7A-14(c)(2), -15(c).
After the Camden school district was placed into full State intervention under QSAC, its existing Board remained in place, and the Commissioner had the right to appoint three additional members to the Board. N.J.S.A. 18A:7A-47(a). The Board, however, became an advisory board, with limited authority. Ibid. Thereafter, the State-appointed superintendent effectively *308 controlled the Camden school district, with the Board serving in an advisory role. See N.J.S.A. 18A:7A-47(a) to (b), -15(b), -35(a). In addition to advising the State-appointed superintendent, the Board had the right to receive certain information and to participate in the review process that would ultimately lead to the restoration of local control. N.J.S.A. 18A:7A-47(b).
QSAC, which was enacted in 2005 and last substantively amended in 2007, established a comprehensive statutory scheme to evaluate a school district's performance. The statute provides that when a district under full State intervention meets certain "performance indicators," and is placed into partial intervention or returned to local control, a vote on the school district classification must be held within one year. N.J.S.A. 18A:7A-49(e), -53(d).
In April 2014, the Board did not submit the classification question to the county clerk for a vote. The Board maintained that the classification vote was not required until the Camden school *486 district satisfied the "performance indicators" under QSAC. Consequently, no vote was held in April 2014. Moreover, no vote has been held since that time as the school district has remained under full State intervention at least through March 2018.
On April 25, 2016, plaintiffs filed a complaint seeking to compel a school district classification vote. Plaintiffs are residents and organizations representing the citizens and registered voters of Camden. They filed an amended complaint naming as defendants the Board, the Camden school district, the State-appointed superintendent of the school district, and the Commissioner. The Commissioner was later dismissed from the action.[2]
The amended complaint contained two counts: a claim in lieu of prerogative writs of mandamus; and a claim asserting a violation of the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2. Both claims sought to compel the Board to hold a vote on the school district classification, so that the voters of Camden could decide whether the members of the Board would be elected or appointed by the mayor.
In May 2016, plaintiffs filed a motion to proceed summarily, asserting that the material facts were undisputed. In response, defendants moved to dismiss plaintiffs' complaint, agreeing that the material facts were not in dispute, but contending that the provisions of QSAC govern when Camden voters will have the right to vote on the classification status of their school district.
The trial court heard oral argument on those motions, and (1) granted plaintiffs' motion to proceed summarily, and (2) granted defendants' motion to dismiss plaintiffs' complaint with prejudice. The court explained the reasons for its ruling on the record on August 15, 2016, and entered an order memorializing its ruling that same day.
*487 In dismissing plaintiffs' complaint, the trial court relied on two rationales. First, it held that the provisions of QSAC effectively superseded the 2010 amendment to MRERA when the Camden school district was placed into full State intervention in 2013. Therefore, according to the trial court, the Board acted within its authority in not submitting the school district classification question to the voters in April 2014. Second, the trial court held that plaintiffs' claims were time-barred under *309 the statute of limitations applicable to actions in lieu of prerogative writs and claims under the CRA.
II.
Plaintiffs appeal, and argue that the 2010 amendment to MRERA entitled them to a vote on the school district classification in April 2014. They therefore contend that a vote should be held as soon as possible. Plaintiffs also assert that the trial court erred in holding that their claims were time-barred. The American Civil Liberties Union of New Jersey submitted an amicus curiae brief in support of plaintiffs' position, arguing that there is no conflict between the 2010 amendment to MRERA and QSAC, and that the 2010 amendment granted Camden citizens the unconditional right to vote on the classification of their school district.
Having reviewed the plain language of the 2010 amendment to MRERA and the plain language of QSAC, we hold that the voters of Camden were entitled to vote on the classification of their school district in April 2014. We also hold that the statute of limitations had not run on plaintiffs' claims. We will first address the statute of limitations and then analyze the relevant provisions of MRERA and QSAC.
1. Statute of Limitations
Determining whether a cause of action is barred by a statute of limitations is a question of law that we review de novo. Catena v. Raytheon Co., 447 N.J. Super. 43, 52, 145 A.3d 1085 (App. Div. 2016). Accordingly, we owe "no deference to [the] trial *488 judge's legal interpretations" in dismissing plaintiffs' complaint as time-barred. Giannakopoulos v. Mid State Mall, 438 N.J. Super. 595, 600, 106 A.3d 507 (App. Div. 2014) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) ).
Initially, we note that plaintiffs asserted two causes of action seeking the same relief: a school district classification vote. Accordingly, a reversal on either statute of limitations ruling will afford plaintiffs the right to proceed with the merits of their substantive relief. We will start with plaintiffs' claim under the CRA because that claim was clearly not barred by the applicable statute of limitations. We also hold that given the important public question at issue in this case-involving citizens' right to vote-it was an error not to expand the statute of limitations for the claim in lieu of prerogative writs.
A. The Statute of Limitations for the CRA
The statute of limitations for claims under the CRA is two years. N.J.S.A. 2A:14-2(a) ; Lapolla v. Cty. of Union, 449 N.J. Super. 288, 298, 157 A.3d 458 (App. Div. 2017).
Here, the vote concerning the school district classification for Camden should have occurred in April 2014. All parties agree that the election date that year was April 23, 2014. The two-year period following that date ended on a Saturday and, accordingly, plaintiffs had until the following Monday-April 25, 2016-to file their complaint. R. 1:3-1. Plaintiffs filed their complaint on April 25, 2016. Plaintiffs' complaint was, therefore, timely if the cause of action accrued on the date that Camden should have held the election.
Defendants argued, and the trial court agreed, that plaintiffs' cause of action accrued eighteen days before the election day, on April 5, 2016, when the Board's secretary failed to forward the proposed question to be voted on to the county clerk. Neither defendants nor the trial court cited any authority to support that position.
*310 *489 We hold that the cause of action accrued on April 23, 2014, when the school district classification vote should have been held. The alleged harm in plaintiffs' CRA claim was the violation of their statutory right to vote. Consequently, the claim did not accrue when the Board failed to forward the proposed question to be voted on to the county clerk. Instead, the cause of action accrued on the date that the vote did not take place. Accordingly, plaintiffs' claim under the CRA was timely, and we reverse the trial court's dismissal of that claim as time-barred.
B. The Statute of Limitations for Claims In Lieu of Prerogative Writs
Generally, actions in lieu of prerogative writs must be commenced no later than "[forty-five] days after the accrual of the right to the review, hearing or relief claimed ...." R. 4:69-6(a). Courts may, however, enlarge the time period within which to file such actions "where it is manifest that the interest of justice so requires." R. 4:69-6(c). "[O]ne of the well-recognized exceptions warranting relief from the statute of limitations [for claims in lieu of prerogative writs] is based on consideration of public rather than private interests." Reilly v. Brice, 109 N.J. 555, 558, 538 A.2d 362 (1988).
Here, plaintiffs filed their action in lieu of prerogative writs more than forty-five days after the school board election date, April 23, 2014. The issue plaintiffs seek to present, however, involves an important public interest. Indeed, the issue here involves one of the fundamental franchises of citizenship: the right to vote and to have a say in governance. Local officials, such as school board members, can be appointed, rather than elected. Sailors v. Bd. of Educ. of Kent, 387 U.S. 105, 108, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967). When, however, the Legislature has passed an act to allow the local citizens to choose how their school board members will be selected, that legislation raises an important public question of local governance. See Robinson v. Cahill, 62 N.J. 473, 499, 303 A.2d 273 (1973) ("Inherent in the concept of local *490 government is the belief that the public interest is furthered when the residents of a locality are given some voice as to the amount of services and expenditures therefor, provided that the cost is borne locally to stimulate citizen concern for performance.").
When a case involves a matter of important public interest, courts "may grant even a very substantial enlargement of the time in order to afford affected parties an opportunity to challenge the alleged unlawful governmental action." Cohen v. Thoft, 368 N.J. Super. 338, 346, 845 A.2d 1281 (App. Div. 2004) ; see also Mullen v. Ippolito Corp., 428 N.J. Super. 85, 106-07, 50 A.3d 673 (App. Div. 2012) (relaxing a multi-year delay in filing an action in lieu of prerogative writs under Rule 4:69-6(c), because the issue involved a matter of "important public interest").
Here, the important public question presented by plaintiffs deserved a hearing on its merits. Accordingly, the statute of limitations for the claim in lieu of prerogative writs should have been extended. We, therefore, reverse the dismissal of that claim on the grounds that it was time-barred.
2. MRERA and QSAC
Determining whether MRERA or QSAC governs the timing of Camden's school district classification vote turns on the interpretation of the relevant provisions of those two statutes. As that is a purely legal question, our standard of review is de novo. McGovern v. Rutgers, 211 N.J. 94, 107-08, 47 A.3d 724 (2012).
Our role in interpreting a statute "is to determine and effectuate the *311 Legislature's intent." Id. at 108, 47 A.3d 724 (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553, 964 A.2d 741 (2009) ). Generally, "the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). Thus, we begin our interpretation with the statute's plain language, "seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." *491 Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 264, 952 A.2d 1077 (2008) (quoting Roberts v. Div. of State Police, 191 N.J. 516, 521, 924 A.2d 550 (2007) ).
The 2010 amendment to MRERA provided that at the commencement of the economic recovery term, the school district shall be a Type I district, but four years later, the voters shall have the opportunity to decide if the district should remain a Type I district or transition to a Type II district. Specifically, the 2010 amendment provided in relevant part:
a. Notwithstanding the provisions of ... [ N.J.S.A. 52:27BBB-63 ] or any other section of law to the contrary, upon the commencement of the economic recovery term in a qualified municipality pursuant to the provisions of ... [ N.J.S.A. 52:27BBB-6 ], a school district which is contiguous with [a] qualified municipality shall become or remain, as applicable, a Type I school district and, except as otherwise provided pursuant to subsection b. of this section, shall be governed by the provisions of Title 18A of the New Jersey Statutes relating to Type I districts.
....
c. At the April school election in the fourth school year following the commencement of the economic recovery term in a qualified municipality, the board of education of the district shall place the question of the classification status of the district as a Type I or Type II district before the voters, which election shall be conducted in accordance with the provisions of Title 19 of the Revised Statutes concerning school elections.
[ N.J.S.A. 52:27BBB-63.1(a), (c).][3]
QSAC authorizes the State to intervene in underperforming school districts, and addresses how a school district will regain local control. N.J.S.A. 18A:7A-49(e). In relevant part, QSAC provides:
If the district successfully meets the quality performance indicators for the governance component of school district effectiveness, not more than one year following the placement of the district under partial State intervention or return to local control, the board shall call a special election for purposes of placing the question of classification status before the voters of the district, which election shall be conducted in accordance with the provisions of Title 19 of the Revised Statutes concerning school elections.
*492 [Ibid. ]
See also N.J.S.A. 18A:7A-53(d).
While the statutes overlap in some respects, there is no conflict between the plain language of MRERA and QSAC. MRERA plainly, and without qualification, provides that four years after a municipality such as Camden commences economic recovery, its citizens will vote and decide the classification of their school district. In that regard, MRERA used the word "shall" and directed a vote in the "fourth school year following the commencement of the economic recovery term ...." N.J.S.A. 52:27BBB-63.1(c). It is undisputed that Camden commenced the economic *312 recovery term in January 2010. There were no other qualifications, conditions, or limitations on the citizens' right to a school district classification vote.
The relevant provisions of QSAC do not conflict with MRERA. If, as here, the school district is under full State intervention, then one year after the school district is placed into partial State intervention or qualifies for a return to local control, Camden will have another vote on its school district classification. Critically, nowhere does QSAC state that a school district under State intervention cannot hold a classification vote. Indeed, QSAC addresses how and when a reclassification vote can be held. See N.J.S.A. 18A:9-4. The only limitation on multiple votes is if the vote is called for by resolution or petition, then a future resolution or petition cannot be submitted within four years of the last vote. Ibid.
Moreover, nothing in QSAC states that members of a school board under State intervention cannot be elected. To the contrary, QSAC expressly provides that upon State intervention, the State "shall retain the Board of Education in place at the time" of the intervention. N.J.S.A. 18A:7A-47(a). Furthermore, QSAC contemplates that some school districts will be Type I and others will be Type II. N.J.S.A. 18A:9-2 to -4. In that regard, QSAC and its administrative regulations address how school board members will be replaced when their terms expire during the period of full State *493 intervention. Accordingly, in a Type II school district, the school board members continue to be elected as vacancies occur. See N.J.A.C. 6A:30-6.8(c) (stating that during a period of full State intervention "[a]ny ... district board of education member seat vacancy(ies) shall be filled in the same manner as the seat(s) was/were filled initially."); see also N.J.S.A. 18A:9-3 ; N.J.S.A. 18A:12-11.
The legislative history of the 2010 amendment to MRERA supports our interpretation of the statute's plain language. While the history does not directly discuss any interplay between the amendment and QSAC, it does expressly recognize that only Camden was subject to the MRERA amendment at the time of its enactment. With the focus on Camden, both of the committee statements to the bills before the Assembly and Senate stated "in the fourth year following the commencement of the economic recovery term ... the board of education of the district will place the question of the classification status of the district as a Type I or Type II district before the voters." Assemb. Appropriations Comm. Statement to A. 4375 (Jan. 4, 2010); S. Budget & Appropriations Comm. Statement to S. 3166 (Jan. 7, 2010).
Our interpretation of MRERA and QSAC also is supported by the specificity and timing of the two statutes. MRERA was first enacted in 2002. Shortly thereafter, the State used MRERA as authority for effectively taking over Camden's municipal governance. QSAC was enacted as an amendment to Title 18A in 2005, and was last substantively amended in 2007. L. 2005, c. 235, § 2; L. 2007, c. 260, § 22. The amendment to MRERA in 2010 is more recent, and expressly stated that the citizens of Camden shall vote on the classification of their school district in April 2014.
Defendants' principal argument is that the express direction of the Legislature in the 2010 amendment to MRERA was effectively superseded in 2013, when the Commissioner placed the Camden school district into full State intervention status under QSAC. As we have already discussed, that construction of the two statutes is not supported by their plain language. Instead, MRERA is clearly *494 the more specific and contemporaneous statute. Accordingly, even if the statutes could *313 be said to be in conflict, MRERA would control. See Bd. of Educ. of S. Brunswick v. Eckert, 361 N.J. Super. 238, 248, 824 A.2d 1132 (App. Div. 2003) (quoting N.J. Transit Corp. v. Borough of Somerville, 139 N.J. 582, 591, 661 A.2d 778 (1995) ) ("It is a well[-]established precept of statutory construction that ... the more specific [statute] controls over the more general[.]"); see also 2B Norman J. Singer & J.D. Shambie Singer, Sutherland on Statutory Construction, § 51:2 (7th ed. 2012) ("If an irreconcilable conflict does exist between two statutes, the more specific statute controls over the more general one, or the newer provision controls as the latest legislative expression[.]").
Finally, our interpretation of MRERA is supported by two recognized principles. First, statutes should, where possible, be read in harmony. See N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 555, 49 A.3d 860 (2012) ("Whenever statutory analysis 'involves the interplay of two or more statutes, we seek to harmonize [them], under the assumption that the Legislature was aware of its actions and intended' for related laws 'to work together.' "). Applying this principle here, there will be no interference with the State's full intervention in the Camden school district by allowing the voters to decide whether Board members should be elected or appointed by the mayor. Ultimately, under QSAC, there will be a second vote on that issue when Camden is either placed into partial State intervention, or local control is returned to the Board.
Second, statutes should be construed " to allow the greatest scope for public participation in the electoral process[.]" N.J. Democratic Party, Inc. v. Samson, 175 N.J. 178, 190, 814 A.2d 1028 (2002) (quoting Catania v. Haberle, 123 N.J. 438, 448, 588 A.2d 374 (1990) ). Construing the 2010 amendment to MRERA as requiring a vote in April 2014, is consistent with that principle. Again, QSAC will require a second vote on that same issue sometime in the future. Voting twice in two separate elections, however, is better *495 than delaying a vote that our Legislature directed should have occurred in 2014.
Accordingly, we reverse the trial court's August 15, 2016 order dismissing plaintiffs' complaint. We remand with the direction that the complaint be reinstated and that within thirty days of the issuance of this opinion, the trial court conduct a hearing to determine when the school district classification vote will be held. That vote cannot be held later than April 2019.
Reversed and remanded. We do not retain jurisdiction.

MRERA was amended in December 2002, after certain of its provisions were deemed special legislation. Thereafter, we held that the provisions of MRERA addressing school district governance were not special legislation and were constitutional. McGreevey, 369 N.J. Super. at 607, 850 A.2d 505.

The Commissioner was dismissed in a stipulation that stated: "Plaintiffs and the Commissioner agree that the Commissioner is not a necessary or indispensable party to the claims asserted in the [f]irst [a]mended [c]omplaint."

Subsection (b) of that section addressed how board members will continue in their terms and how they will be replaced during the four-year period. N.J.S.A. 52:27BBB-63.1(b).