## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2306-19

RANJIT BENIPAL, DIWAN
BENIPAL, BHAGWAN SINGH
and SUBHAN SINGH,

     Plaintiffs-Appellants,

v.

TRI-STATE PETRO, INC.
and AMAR GILL,

     Defendants-Respondents.

_____

Argued May 31, 2022 – Decided August 16, 2022

Before Judges Messano, Rose and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Mercer County, Docket No. C-000060-17.

Kevin T. Kerns argued the cause for appellants (Cozen O'Connor, attorneys; Kevin T. Kerns and John P. Johnson, Jr., on the briefs).

Donald W. Kiel argued the cause for respondents (K&L Gates, LLP and Martin Law LLC, attorneys; Donald W. Kiel and Benjamin I. Rubinstein, on the brief).

PER CURIAM

This intrafamily dispute about the ownership of commercial property in West Windsor is before us a second time. We described the factual allegations underlying the complaint filed by plaintiffs-brothers Ranjit Benipal, Diwan Benipal, Bhagwan Singh, and Subhan Singh, against their cousin, defendant Amar Gill and his company Tri-State Petro, Inc. (TSP), in our prior opinion, Benipal v. Tri-State Petro, Inc., A-0894-17 (App. Div. Jan. 4, 2019).

Plaintiffs alleged they contributed equally with Gill to fund a joint venture, G&B Business Associates, Inc. (G&B), to purchase the property and operate a gas station on it. Id. at 2–3. Plaintiffs claimed that "[i]nstead of titling the property in G&B's name, however, Gill titled the property in the name of . . . [TSP], a company Gill owned with his family." Id. at 3.

On defendants' motion, the trial judge dismissed plaintiffs' complaint alleging fraud and seeking quiet title to the property based on the statute of limitations. Id. at 4. In large part, the judge rejected plaintiffs' invocation of the discovery rule, see, e.g., Lopez v. Swyer, 62 N.J. 267, 273 (1973), and concluded plaintiffs were on constructive notice in early 1994, when the property was purchased and the deed duly recorded that reflected TSP was the

A-2306-19

sole purchaser.  Id. at 3–4.  The judge ruled plaintiffs' 2017 complaint was, therefore, time barred.  Id. at 4.

We reversed and remanded the matter to conduct a Lopez hearing.  Id. at 10.  We explained our reasoning as follows:

> [E]xtending to plaintiffs the benefit of all favorable inferences set forth in their complaint, as we must, we conclude the record is not fully developed surrounding Gill's purchase of the property and recording of the deed in TSP's name.  Further, the present record is incomplete as to when, and under what circumstances, plaintiffs discovered that the property was not titled in G&B's name.  Discovery has not yet commenced in this matter and more information is needed, for example, to shed light on G&B's ownership structure and assets held since 1994.  Despite plaintiffs' obvious complacency over the years, it is not clear on the record before us that even a prudent investor would have uncovered concealment of the property's true ownership.

> Given these and other uncertainties, we conclude that the most appropriate course of action is to remand the matter for an evidentiary hearing under Lopez.  As the Court noted in Lopez, such a hearing is not always necessary, but "[g]enerally the [knowledge] issue will not be resolved on affidavits or depositions since demeanor may be an important factor where credibility is significant."  That rationale is even more applicable here, where no answer has yet been filed, discovery has not yet commenced, and we are limited in our review to the four corners of plaintiffs' complaint.  Accordingly, we discern that credibility is an issue that is best explored at an evidentiary hearing.  For these reasons we conclude the motion judge's failure to conduct a

3

Lopez hearing was plain error, capable of producing an unjust result, and we remand for that purpose.

[Id. at 8–9 (second and third alterations in original) (emphasis added) (quoting Lopez, 62 N.J. at 275).]

Following limited discovery, the Law Division judge conducted the hearing we ordered. Over several days, he heard the testimony of a number of witnesses, including some plaintiffs and defendant Gill.[1] In his oral opinion following the hearing, the judge first recounted each witness's testimony.

The judge noted the purpose of the hearing was not to decide the merits of plaintiffs' complaint but only to "decid[e] . . . whether or not the discovery rule applies here." He noted there was no testimony from plaintiff Subhan Singh to "sustain his burden . . . with regard to the discovery [rule]," so the judge dismissed the complaint as to Subhan. The judge noted the "dearth of documentary evidence" and concluded resolution of the question "depend[ed] on the [c]ourt's assessment of the credibility of the witnesses." The judge found "plaintiffs are independent and experienced businessmen," with "substantial interests outside of G&B," and Gill had no "involvement in any of the other businesses started and operated by plaintiffs." Noting plaintiffs' description of

---

[1] We apologize for the informality of sometimes using first names, but we do so to avoid confusion since several witnesses share the same surname.

their relationship with Gill, who, although their cousin, was described more as an uncle or older brother, the judge found it was expected, therefore, that Gill would be involved in plaintiffs' other business ventures.

The judge noted plaintiffs' business acumen included "leases, deeds, notes, and mortgages," and each testified they "understood the significance of a deed, that it demonstrates legal ownership of the property . . . . Yet at no time did any of them ask . . . Gill for a copy of the deed or did they attempt to check the public record." The judge also found the deed was properly recorded, and Gill never "attempt[ed] . . . to conceal the transaction by not recording the deed in a timely fashion." He further noted that plaintiffs could have checked the records in the local tax office, which reflected TSP owned the property, and "farmland assessment applications" in TSP's name, but they never did.

The judge also found that "various notices and permits" were kept at the gas station and showed TSP as its owner. The judge cited, as examples, "DEP certificates . . . issued in 1994." Additionally, the judge found, "Plaintiffs were well aware that the site was in deplorable condition in 1994 and that hundreds of thousands of dollars were required for the improvement of the site. Plaintiffs were aware about the work that was being performed." The judge also found that "[p]laintiffs never asked for any documentation of their ownership interest,"

5

and observed there was "no evidence other than their own uncorroborated claim that they were lulled into this false belief by Gill that they had owned the property." The judge found that neither Ranjit nor Bhagwan could "recall a single conversation with Gill about the . . . property after 1994."

The judge then addressed the non-exhaustive list of "determinative factors" the Lopez Court said should be considered in deciding whether equity justified application of the discovery rule to toll a statute of limitations. These included:

> the nature of the alleged injury, the availability of witnesses and written evidence, the length of time that has elapsed since the alleged wrongdoing, whether the delay has been to any extent deliberate or intentional, whether the delay may be said to have peculiarly or unusually prejudiced the defendant.
>
> [62 N.J. at 276.]

The judge concluded that without documentary evidence, "plaintiffs' case rests entirely on a conversation that is alleged to have occurred over [twenty-five] years ago and . . . even Diwan . . . admitted he could not recall the particulars of the conversation between him and Amar Gill."

The judge found that "a reasonable person exercising due diligence should have discovered that plaintiffs were not the owners of the . . . property during the discovery period. Plaintiffs have failed to demonstrate they're entitled to

6

relief pursuant to the discovery [rule]." The judge dismissed the complaint and this appeal followed.

I.

Before proceeding to the specific arguments plaintiffs raise on appeal, we set some parameters for our review. "Determining whether a cause of action is barred by a statute of limitations is a question of law that we review de novo." Save Camden Pub. Schs. v. Camden City Bd. of Educ., 454 N.J. Super. 478, 487 (App. Div. 2018) (citing Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (App. Div. 2016)). "The application of the discovery rule is for the court, not a jury, to decide." Catena, 447 N.J. Super. at 52 (citing Lopez, 62 N.J. at 274–75).

"Under the rule, a claim does not accrue until the plaintiff 'discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he [or she] may have a basis for an actionable claim.'" Id. at 52–53 (emphasis added) (quoting Lopez, 62 N.J. at 272). "The party seeking the rule's benefit bears the burden to establish it applies." Id. at 53 (citing Lopez, 62 N.J. at 276). Following a Lopez hearing, the "trial court's findings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" R.L. v. Voytac, 199 N.J. 285, 303 (2009) (quoting State v. Elders, 192 N.J. 224, 244 (2007)).

7

Without question, the two causes of action pled by plaintiffs were time barred when the complaint was filed in 2017. Benipal, slip op. at 7. Plaintiffs bore the burden to prove their quiet title action did not accrue until 1997 at the earliest, i.e., within the twenty-year statute of limitations in N.J.S.A. 2A:14-7, and their fraud claim did not accrue until 2011 at the earliest, within the six-year statute of limitations in N.J.S.A. 2A:14-1. They needed to demonstrate that an average investor, even with the exercise of reasonable diligence and intelligence, would not have discovered before 2011 the basis for an actionable claim based on Gill's alleged fraud, or would not have discovered before 1997 that the property was titled in TSP's name.

We fully concur with the hearing judge that plaintiffs failed to carry their burden, because they essentially acknowledged not exercising the reasonable diligence and intelligence of the average business investor. As we explain further below, we reject plaintiffs' claim that the judge failed to use an objective standard in conducting his analysis. Maldonado v. Leeds, 374 N.J. Super. 523, 531 (App. Div. 2005). The judge's opinion may be clearly read as finding that it was not just that plaintiffs failed to exercise reasonable diligence and intelligence, but rather, that a prudent sophisticated business investor would have, through the exercise of reasonable diligence and intelligence, discovered

facts — for example, that the property was titled in TSP's name in 1994, DEP permits were issued to TSP in 1994, and TSP was listed on the tax records as the property's owner — "that would alert a reasonable person to the possibility of an actionable claim." Catena, 447 N.J. Super. at 54 (quoting Lapka v. Porter Hayden Co., 162 N.J. 454, 555–56 (2000)). Plaintiffs never had any interest in TSP. Any reasonable investor would objectively understand that he or she had an actionable claim shortly after the property was purchased in 1994, and certainly before 1997, to the quiet title action, or before 2011 as to the fraud claim.

II.

Plaintiffs' specific challenge to the soundness of the judge's findings and conclusions, instead, rests on two evidential rulings he made. "Because the determination made by the trial court concerned the admissibility of evidence, we gauge that action against the palpable abuse of discretion standard." Brenman v. Demello, 191 N.J. 18, 31 (2007) (citing Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)). "Accordingly, 'we will reverse an evidentiary ruling only if it "was so wide [of] the mark that a manifest denial of justice resulted."'" Rowe v. Bell & Gossett Co., 239 N.J. 531, 551–52 (2019) (alteration in original) (quoting Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016)).

"However, no deference is accorded when the court fails to properly analyze the admissibility of the proffered evidence." E&H Steel Corp. v. PSEG Fossil, LLC, 455 N.J. Super. 12, 25 (App. Div. 2018) (citing Konop v. Rosen, 425 N.J. Super. 391, 401 (App. Div. 2012)). In those situations, our review is de novo. Konop, 425 N.J. Super. at 401.

A.

As noted above, in our prior opinion we cited the lack of information about "G&B's ownership structure and assets held since 1994" and lack of clarity in the record "that even a prudent investor would have uncovered concealment of the property's true ownership." Benipal, slip op. at 8. Before any testimony at the hearing, defendants moved in limine to exclude the tax returns and other financial documents of non-party G&B, which, plaintiffs argued, reflected G&B owned the property. Defendants challenged plaintiffs' interpretation of the financial records, citing deposition testimony of the accounting firm that prepared them, but defendants also argued that plaintiffs never asked to see the documents between 1994 and commencement of the suit. Defendants contended the evidence was irrelevant to the purpose of the plenary Lopez hearing.

Plaintiffs conceded they never asked to see the documents, but they argued even if they had, the documents would have supported their belief that G&B

owned the property. In other words, measuring plaintiffs' conduct against that of a reasonably prudent investor, plaintiffs still would not have discovered Gill's fraudulent acts. As plaintiffs' counsel explained, applying an objective standard, if the judge found plaintiffs acted unreasonably by not making sufficient inquiries, "you have to look at what they would have found" if they had asked for the financial documents.

The judge granted defendants' motion without prejudice. He explained,

> [T]he initial question with regard to these records is whether or not the plaintiffs ever requested the records. Plaintiffs wish to go beyond that and with the [c]ourt to examine the records and make a decision [about] what would have been revealed if the plaintiffs had looked at the records, but that's a step too far. The fact of the matter is that plaintiffs' concession that they have not looked at these records demonstrates that these records are not material.
>
>     . . . If at trial, based upon evidence that's presented to the [c]ourt regarding the level of the relationship [between the parties], plaintiffs are able to demonstrate to the [c]ourt that somehow that level of that relationship may have excused the failure to request the records, then the [c]ourt will revisit the issue.

The judge denied plaintiffs' subsequent request during the hearing essentially on the same grounds.

A-2306-19

Before us, plaintiffs contend the judge failed to apply the "objective standard" and consider that even had plaintiffs asked for the financial information, it would not have alerted them to Gill's fraud or that TSP owned the property. In part, plaintiffs rely upon our decision in Catena for the proposition that even if a plaintiff exercises no due diligence before the statutory accrual deadline, he may still satisfy the discovery rule and benefit from equitable tolling of the statute of limitations if such efforts "would likely have been futile."

We accept plaintiffs' contention that the financial information was relevant. As we said in Catena, "[i]f [the plaintiff] can demonstrate that reasonable diligence would not have revealed the fraud . . . his claims will not be time-barred." 447 N.J. Super. at 59. However, any error in excluding the evidence was harmless. See R. 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . .").

Viewing the facts objectively, "[g]enerally stated, in order to justify the tolling of a statute of limitations, plaintiffs must explain why they reasonably could not have discovered their cause of action in time to comply with the limitation period." Phillips v. Gelpke, 190 N.J. 580, 595 (2007). Although we

12

recognized in <u>Catena</u> the relevance of what a diligent inquiry may have or may have not revealed, we made clear that application of the discovery rule required the court to "determine at what point [the plaintiffs], through the exercise of reasonable diligence, <u>should have discovered the alleged fraud</u>." 447 N.J. Super. at 59 (citing <u>Partrick v. Groves</u>, 115 N.J. Eq. 208, 211 (E. & A. 1934)).

The judge's findings make clear his conclusion that acting as reasonably prudent investors would, plaintiff should have discovered shortly after closing on the property that Gill had titled it in TSP's name, and that G&B did not own the property. Plaintiffs have consistently claimed that was contrary to their agreement with Gill, and it was sufficient knowledge to alert plaintiffs that they "may have [had] a basis for an actionable claim." <u>Id.</u> at 52–53 (quoting <u>Lopez</u>, 62 N.J. at 272). These findings and conclusions are unassailable on this record. Admitting evidence that if plaintiffs had checked other documents, i.e., G&B's financial records, they would not have discovered the alleged fraud does not compel or even suggest a different result. Excluding evidence of G&B's financial records was not "clearly capable of producing an unjust result." <u>R.</u> 2:10-2.

B.

Plaintiffs' other evidentiary challenge is that the judge erred in relying on N.J.R.E. 408 to exclude certain evidence. That evidence rule provides:

> When a claim is disputed as to validity or amount, evidence of statements or conduct by parties or their attorneys in settlement negotiations . . . including offers of compromise or any payment in settlement of a related claim, is not admissible either to prove or disprove the liability for, or invalidity of, or amount of the disputed claim. Such evidence shall not be excluded when offered for another purpose; and evidence otherwise admissible shall not be excluded merely because it was disclosed during settlement negotiations.
>
> [N.J.R.E. 408.]

We need to provide some context.

Plaintiffs claimed they first knew about Gill's alleged fraud in 2016 and went to his home to discuss the situation. Ranjit testified that Gill admitted making a mistake by titling the property in TSP's name and said he would fix the mistake, although it might take some time. Gill denied such a meeting every occurred.

Plaintiffs first tried to introduce the testimony of a third-party, Sikander Ranu, Gill's son-in-law, regarding an April 26, 2017 meeting he arranged for all parties to attend at a Sikh temple. The judge heard some of Ranu's testimony

14

and concluded Ranu "set up the meeting in order to try to get the parties to come to an agreement about this dispute."  Citing our decision in KAS Oriental Rugs, Inc. v. Ellman, 394 N.J. Super. 278 (App. Div. 2007), the judge concluded evidence about alleged admissions Gill made during the meeting was inadmissible under N.J.R.E. 408.

Ranjit further testified that at a subsequent meeting earlier in April 2017, he confronted Gill about his earlier promise to "correct the problem," and why was it taking so long; an argument ensued.  Ranjit "asked [Gill] if he want[ed] to split the property, I need some information."  The judge sustained defense counsel's objection, concluding the testimony was "an offer of compromise," inadmissible under N.J.R.E. 408.

Plaintiffs then sought to introduce an email chain, dated April 6 through April 10, 2017.  In an email to Gill's son Preet, Ranjit summarized the earlier meeting, claiming Gill admitted mistitling the property "since we had paid for that property in our investment.  As per the meetings that property will be part of valuation of the G&B business and get divided among the owners of G&B."  The document showed Preet forwarded the email to Gill who responded:  "Preet, [I] agree with the contents of email received from Ranjit . . . . [P]lease forward this to your [U]ncle Ranjit.  Thanks.  Your Dad."  Defense counsel objected to

introduction of the document, and the judge sustained the objection and excluded the document pursuant to N.J.R.E. 408.

Ranjit testified he had several more discussions with Gill after receiving the email, sparking another objection from defense counsel. The judge again sustained the objection, noting "this issue relates to something outside of 2016 going to what I've already ruled to be settlement negotiations."

Plaintiffs argue these rulings were premised on an erroneous understanding of N.J.R.E. 408's scope and application. They argue evidence of Gill's "admissions" to mistakenly titling the property in TSP's name was not about a "disputed claim" within the rubric of the rule, the evidence was not sought to be admitted to prove the "validity or amount" of plaintiffs' claim, and had the evidence been properly admitted, the lack of any documentation regarding the original purchase of the property would be "rendered extraneous." We largely agree with the judge's rulings.

Initially, we note that plaintiffs were not excluded from introducing evidence Gill admitted during a 2016 meeting that he had mistitled the property and agreed to remedy the situation. The judge had the ability to consider the testimony in this regard, as well as Gill's denial.

A-2306-19

Plaintiffs, therefore, recognize that the only issue is whether rulings excluding Ranu's testimony about the April 2017 meeting at the temple, Ranjit's testimony about the earlier meeting in April 2017, and the April 2017 email chain that included Gill's admission would have otherwise tipped the balance of the credibility scale.

Ranu acknowledged he organized the meeting at the temple specifically to get the parties to come to some agreement. We agree with the judge that "evidence of statements or conduct by parties" in this context is not admissible to prove Gill defrauded plaintiffs. See N.J.R.E. 408. We also agree that Ranjit's testimony about his follow-up meeting with Gill in April 2017 was more than just a "demand" that Gill make good on his earlier promise to correct the deed, which is how plaintiffs' counsel characterized it. As the judge properly found, the testimony clearly focused on Ranjit's willingness to discuss an amicable settlement of the parties' interests in the property after he was supplied with additional information.

That leaves the email chain and Gill's acknowledgment to his son that he agreed with Ranjit's summary of a prior meeting and Gill's commitment to rectify a mistake. But, the judge correctly noted that "[w]hen in the course of a defendant's settlement offer, he makes an admission of his liability, N.J.R.E. 408

17                                                                              A-2306-19

proscribes the evidential use of such a statement as proof of liability." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 408 (2022–23). We find no error in these rulings.

Moreover, even if we are incorrect, any error was harmless. The sole purpose of the hearing was for the judge to decide whether plaintiffs were entitled to the discovery rule's equitable tolling of the applicable statutes of limitations. This equitable relief was only available if plaintiffs proved their objectively reasonable conduct would not have alerted them to the possibility of a viable cause of action against Gill during the time period prior to the start of the statute of limitations' clock. The exclusion of evidence about events that occurred twenty-three years after the property was purchased and titled solely in TSP's name did not have the clear capacity to bring about an unjust result. R. 2:10-2.

In light of our disposition, we need not consider plaintiffs' final argument that it was error to dismiss Suban as a plaintiff because he failed to testify.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION